Danny J. **ELDER** and Enviro–
Stain, Inc., Plaintiffs,

v.

A.D. **TANNER** and Tanner Forest
Products, Corp., Defendants.

No. 1:98–CV–36.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 20, 2001.

See, also, 205 F.R.D. 190.

Brian Dale Sutton of Dryden, Grossheim & Sutton, Beaumont, TX, Robert Keith Wade of Wade & Gilmore, Beaumont, TX, for Plaintiffs.

Mark K. Glasser & Charles C. Correll, Jr. of Porter & Hedges, Houston, TX, J. Thad Heartfield, Jr. of Heartfield & McGinnis, Beaumont, TX, for A.D. Tanner & Tanner Forest Products Corp.

Hubert Oxford III of Beckenstein & Oxford, Beaumont, TX, J. Clark Martin of Vinson & Elkins, Houston, TX, David B. Weaver and Nicole W. Stafford of Vinson & Elkins, Austin, TX, Charles S. Weems, III, G. Trippe Hawthorne and Raymond L. Brown, Jr. of Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, J. Thad Heartfield, Jr. of Heartfield & McGinnis, Beamont, TX, for Roy O. Martin Lumber Co.

Frank David Calvert and Hubert Oxford, III of Beckenstein & Oxford, Beamont, TX, J. Clark Martin of Vinson & Elkins, Houston, TX, David B. Weaver and Nicole W. Stafford of Vinson & Elkins, Austin, TX, Charles S. Weems, III, G. Trippe Hawthorne and Raymond L. Brown, Jr. of Gold, Weems, Bruser, Sues & Rundell, Alexandria, LA, for Jonathan E. Martin, Martco Partnership & Roy O. Martin Lumber Co. Ltd. Partnership.

*MEMORANDUM OPINION AND ORDER DENYING THE MARTIN DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF PATENT INVALIDITY BASED ON PRIOR ART PUBLICATIONS*

SCHELL, District Judge.

This matter is before the court on "The Martin Defendants' Motion For Partial Summary Judgment Of Patent Invalidity Based On Prior Art Publications" (Dkt.# 131), filed on May 30, 2001. Plaintiffs filed a response (Dkt.# 140) on June 28, 2001, and Defendants filed a reply (Dkt.# 145) on July 9, 2001. Plaintiffs then filed a supplemental response (Dkt.# 163) on September 28, 2001. Upon consideration of the parties' written submissions, exhibits, affidavits, and the applicable law, the court is of the opinion that Defendants' motion for partial summary judgment should be DENIED.[1]

## I. BACKGROUND

On December 16, 1997 Danny J. Elder ("Elder") and Enviro–Stain, Inc. (collectively "Plaintiffs") filed an Original Petition in the District Court of Jasper County, Texas alleging breach of contract and various related claims against then defendants A.D. Tanner and Tanner Forest Products. That action was removed to federal court on January 22, 1998, and was dismissed by reason of settlement on May 3, 1999. Subsequently, Plaintiffs filed an amended complaint on March 27, 2000, adding current Defendants Martco Partnership and Roy O. Martin Lumber Co., Inc. (collectively "Defendants")[2] and alleging, among other things, that Defendants willfully infringed certain claims within 3 patents issued to Plaintiff Danny J. Elder: (1) United States Patent No. 5, 836,086 ("'086" patent); (2) United States Patent No. 6,014,819 ("'819" patent); and (3) United States Patent No. 6,119,364.

Plaintiffs' specific claims of patent infringement related to the '086 and '819 patents are the subject of the instant motion. Defendants move for summary judgment on claims 1, 2, 4, and 5 of the '086 patent,[3] and claims 1, 2, 3, 6, and 7 of the

1. Defendants also filed a request for oral argument on their motion for partial summary judgment (Dkt.# 162) on September 11, 2001. Plaintiffs' filed a response (Dkt.# 164) on October 5, 2001. Defendants filed a reply (Dkt.# 166) on October 24, 2001. Due to the court's conclusion in this memorandum and opinion, Defendants' request for oral argument is also DENIED.

2. Plaintiffs also added former defendants Jonathan E. Martin and Roy O Martin Lumber Company, Limited Partnership, however, these former defendants were dismissed without prejudice by court order on July 25, 2001.

3. In Plaintiffs' response to Defendants' motion for summary judgment, they state that the parties agreed to allow Plaintiffs to amend their designation of claims to include claims 2, 4, and 10 of the '086 patent, and claims 2 and 6 of the '819 patent. Defendants' reply, however, claims that they agreed to permit

'819 patent, arguing that the patents are invalid because each claim of both patents is anticipated under 35 U.S.C. § 102(b) by numerous prior art references.[4] Because each claim is anticipated by 1 or more prior art references, Defendants assert that the patents are invalid and no genuine issue of material fact exists; therefore, they did not infringe any of the above claims. Plaintiffs', however, contend that none of the prior art references adduced by Defendants disclose each element of the patented inventions. To analyze whether the claims of both patents at issue are anticipated by the proffered prior art references, the court must first summarize the substance of each patent and the claims at issue therein.

## II. THE PATENTED INVENTIONS

### A. *The '086 Patent*

#### 1. *Description And Summary Of The Invention*

The invention disclosed by the '086 patent relates to an accelerated drying process for the rapid reduction of moisture in green wood[5] prior to turning the wood into various wood products. After the wood is felled, but before initiating any pre-drying process, the green wood is first stickered and stacked in bundles, and then heated to a predetermined temperature, preferably above 150° Fahrenheit ("F"), inside an enclosed heating chamber for a predetermined period of time. The time must be long enough so that the wood is uniformly heated. Concurrently, moisture is applied during the heating of the wood. The heating fluid used in this step is usually steam, although heated water or oils can be used as well. In this step of the process, steam is injected through a conduit so that the moisture content of the wood after heating is similar to its moisture content before heating.

After the initial heating, the wood is exposed to a cooling fluid, preferably ambient air,[6] within 30 minutes after the heating step has ended. This is referred to as the cooling or "flash off" step. The ambient air is applied either by exposing the wood to outside conditions or by utilizing a blower which provides air from the outside environment. If ambient air is not satisfactory, artificial air from an air conditioning unit may serve as the cooling fluid. The temperature and humidity of the cooling fluid used should be substantially less

Plaintiffs to amend their designation to include all but claim 10 of the '086 patent. As the parties apparently cannot agree on the status of claim 10, and since Plaintiffs have not provided the court with any substantive evidence to support the assertion of such a claim, the court will not consider claim 10 as part of Plaintiffs' designation of claims.

Further, Defendants state that Plaintiffs have asserted claims 35 and 38 of the '086 patent, and thus, they are subject to the court's ruling on this motion. Plaintiffs, however, mention nothing of those claims in their response or supplemental response. Thus, the court will assume that claims 35 and 38 are not at issue in this case.

4. In addition to Defendants' anticipation argument, they originally argued that the patents were invalid because they were rendered obvious by numerous prior art references pursuant to 35 U.S.C. § 103. Defendants later withdrew this argument in their request for oral argument.

5. "Green wood" is freshly cut wood or wood having a moisture content very close to the original moisture content that the wood had at the time the tree from which it came was felled. Joint Agreed Glossary of Claim Terms and Elements at 2.

The parties filed this joint glossary on June 28, 2001 in lieu of a *Markman* hearing. In it, the parties define certain terms in Plaintiffs' claims and specify the exact meaning of claim elements. The court hereby adopts the definitions therein and will refer to the glossary when applicable.

6. The term "ambient air" means outside air. Joint Agreed Glossary of Claim Terms and Elements at 1.

than that of the heated wood so that the wood will fall to the temperature of the surrounding environment. Specifically, the temperature of the cooling fluid should be at least 30° F, but preferably 50° F, below the temperature of the heated wood, and the relative humidity should be about 10% less than that of the heated chamber. After being cooled by the fluid for 3 to 10 hours, the moisture of the wood will drop by approximately 5–10% without showing any defects from drying. The cooling process described above also has the effect of conditioning the wood for rapid removal of moisture upon subsequent treatment in the drying process.

After completion of the cooling step, the green wood is subjected to further drying steps wherein the wood is reheated. The total time from felling through completion of the drying cycle is allegedly considerably shorter than existing conventional drying processes.

### 2. The '086 Patent Claims At Issue

Claim 1 of the '086 patent reads as follows:
What is claimed is:

A method for the rapid reduction of the moisture content of green wood utilizing a controlled heating fluid in a confined zone comprising the following steps:

applying the heating fluid at a temperature between about 120° F and 190° F to the wood in the confined zone for a predetermined period of time sufficient to provide a generally uniform heating of the green wood, the heating fluid having a predetermined moisture content sufficient to maintain substantially the moisture content of the green wood;

applying a cooling fluid after heating of said green wood for surrounding said green wood, the cooling fluid having a temperature and humidity substantially less than the temperature and moisture content of the heated wood; and

maintaining the application of the cooling fluid to said green wood for a predetermined time period sufficient for said wood to reach substantially the reduced temperature of the cooling fluid for the removal of substantial moisture from the green wood.

Claim 2, which is dependent upon claim 1, reads as follows:

The method as set forth in claim 1 wherein the step of applying a cooling fluid includes applying a cooling fluid having a temperature at least about 30° F less than the temperature of the heated wood and a relative humidity at least about 10% less than the relative humidity of the heated confined zone.

Claim 4, which is dependent upon claim 1, reads as follows:

The method as set forth in claim 1 including the step of maintaining the moisture content of the green wood prior to placing the green wood within the confined zone for heating to a moisture loss not greater than 10% of the original moisture content of the wood when felled.

Claim 5, which is also dependent upon claim 1, reads as follows:

The method as set forth in claim 1 wherein the step of applying a cooling fluid includes applying ambient air to said green wood in an environment outside said confined zone.

U.S. Patent No. 5,836,086 (issued Nov. 17, 1998).

### B. The '819 Patent

#### 1. Description And Summary Of The Invention

Much like the '086 patent described above, the invention disclosed by the '819 patent relates to a process for treating green wood prior to curing or drying of the wood. The '819 patent, however, also

enumerates the explicit purpose of preventing or minimizing staining of the wood prior to turning the wood into various products.

The process described in the '819 patent also begins with placing freshly felled lumber into an enclosed heating chamber or kiln wherein the wood is heated to a predetermined temperature over 120° F for a predetermined time period, usually 2–5 hours. During the heating, the moisture content of the wood is maintained by the application of steam so that the loss of moisture during heating is less than 3%.

Within 30 minutes of completing the heating period, the doors of the heating chamber are opened to initiate the cooling period. During the cooling period, the heated wood is exposed to a cooling fluid, such as ambient or artificially treated air. The temperature of the cooling fluid must be at least 30° F, but preferably 50° F, lower than the temperature of the heated wood, and the fluid's relative humidity must be at least 10% less than the relative humidity in the enclosed heating chamber to minimize staining. When cooled, the evaporation of the heated moisture from the heating period causes a rapid cooling effect on the wood. Thus, the wood's temperature drops dramatically from the target temperature about 5 to 10 minutes after the cooling fluid is applied to the heated wood.

### 2. The '819 Patent Claims At Issue

Claim 1 of the '819 patent reads as follows:
What is claimed is:
A green wood treating process for treating green wood prior to curing for minimizing staining of the green wood; said green wood treating process comprising the following steps:
positioning said green wood within a confined zone for heating;
heating said green wood within said confined zone in a predetermined fluid medium to a predetermined temperature over about 120° F for a predetermined time period sufficient to provide a generally uniform heating of the green wood;
substantially maintaining the moisture content of said green wood during heating;
applying a cooling fluid to the heated green wood after heating of said green wood to a predetermined temperature for a predetermined time, the cooling fluid having a temperature substantially less than the temperature of the heated green wood; and maintaining the application of the cooling fluid to the wood for a predetermined time period.

Claim 2, which is dependent upon claim 1, reads as follows:
The green wood treating process as set forth in claim 1 wherein the step of applying a cooling fluid includes cooling said heated green wood with a cooling fluid at least about 30° F lower than the temperature of the heated wood.

Claim 3, which is dependent upon claim 1, reads as follows:
The green wood treating process as set forth in claim 1 wherein the step of applying a cooling fluid comprises exposing the heated green wood to ambient air at least about 30° F lower than the temperature of the wood.

Claim 6, which is also dependent upon claim 1, reads as follows:
The green wood treating process as set forth in claim 1 wherein the step of applying a cooling fluid includes applying a cooling fluid having a relative humidity at least about 10% less than the relative humidity of the confined zone.

Claim 7 is an independent claim, however, it describes a process similar to claim 1:
A green wood treating process for treating green wood prior to curing for mini-

mizing staining of the green wood, the green wood arranged in bundles of lumber with boards spaced from each other; said green wood treating process comprising the following steps:

positioning said bundles of green wood within a heating enclosure for heating; heating said green wood with steam within said heating enclosure sufficient to provide a generally uniform heating of the green wood to a predetermined temperature over about 120° F for a predetermined time period sufficient to provide a generally uniform heating of the green wood while substantially maintaining the moisture content of said green wood during heating;

applying cooling air at a temperature at least 30° F lower than the temperature of the heated wood to the heated green wood for substantially surrounding the separate boards of the green wood after heating of said green wood to a predetermined temperature for a predetermined time; and

maintaining the application of the cooled air to the wood for a predetermined time period.

U.S. Patent No. 6,014,819 (issued Jan. 18, 2000).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. *See International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *See id.* An issue is material only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this analysis, the court reviews the facts and evidence and draws all inferences in the light most favorable to the nonmovant. *See Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). "Summary judgment is as available in patent cases as in other areas of litigation." *Continental Can Co. USA, Inc. v. Monsanto Co.,* 948 F.2d 1264, 1265 (Fed.Cir.1991) (citation omitted).

## IV. DISCUSSION

### A. *Anticipation Standard*

All patents are presumed valid by statute. *Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1365 (Fed.Cir. 1999) (citing 35 U.S.C. § 282).[7] "The burden is on the party asserting invalidity to

---

[7] In their motion, Defendants allege that none of the prior art referenced in their motion was considered by the Patent and Trademark Office ("PTO") when granting Danny J. Elder the '086 and '819 patents. To this end, they argue that the court need not defer to the decision of the PTO when ruling on the motion.

Since the filing of this motion, however, Plaintiffs requested the PTO to consider each of the prior art references in Defendants' motion, among many others. On August 31, after considering all the prior art submitted by Plaintiffs, the PTO issued a supplemental notice of allowance of the continuation of the '086 and '819 patents. This fact alone does not require the court to rule in favor of Plaintiffs, but it does militate in favor of Plaintiffs position.

prove it with facts supported by clear and convincing evidence." *Id.* (citation omitted).

"Anticipation is a question of fact." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550 (Fed. Cir.1995) (citation omitted). In order to anticipate, there must be identity of invention; thus, the claimed invention, as described in appropriately construed claims, must be the same as that of the reference. *Continental Can Co. U.S.A., Inc. v. Monsanto Co.,* 948 F.2d 1264, 1267 (Fed.Cir. 1991). More specifically, under 35 U.S.C. § 102(b), a patent claim is anticipated by a prior art reference if the reference discloses, either expressly or inherently, each and every element of the claimed patent.[8] *Finnigan Corp.,* 180 F.3d at 1365 (citation omitted); *see also Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1379 (Fed.Cir.1986) (stating that every element of the claimed invention must be identically shown in a single reference for a prior art reference to anticipate).

In the instant motion, Defendants' claim that numerous prior art references anticipate, either expressly or inherently, each of Plaintiffs' claims listed above. When Defendants rely on the understanding of "one skilled in the art," they have relied on an inherency theory in finding the claims anticipated. The concept of inherency in anticipation was fully explained by the Federal Circuit in *Continental Can:*

> To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill.

*Continental Can,* 948 F.2d at 1268–69; *Finnigan Corp.,* 180 F.3d at 1365.

The *Continental Can* court continued with the following statements:

> Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient. If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient.

> This modest flexibility in the rule that "anticipation" requires that every element of the claims appear in a single reference accommodates situations where the common knowledge of technologists is not recorded in the reference; that is, where technological facts are known to those in the field of the invention, albeit not known to judges.

*Continental Can,* 948 F.2d at 1269; *Finnigan Corp.,* 180 F.3d at 1365.

### B. Claim Construction

Bearing in mind the above rules regarding anticipation, the next step in evaluating Defendants' motion is to briefly describe the prior art references set forth by Defendants which allegedly anticipate each of Plaintiffs' claims in the '086 and '819 patents, and to compare the prior art to the claims. To accomplish this, the court must first construe the scope of each of Plaintiffs' claims. The court need not look far

---

8. 35 U.S.C. § 102(b) provides that a patent applicant is not entitled to a patent if "the invention was ... described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States...." Therefore, any printed publication dated more than 1 year prior to the date of application of the patent at issue is considered prior art.

for adequate construction of the claims at issue because the parties define and construe the elements for most of the asserted claims in their "Joint Agreed Glossary Of Claim Terms And Elements." [9] Therefore, to the extent it is possible in ruling on this motion, the court will rely on the parties' stipulated construction of the claims. Any questions that fall beyond the scope of the material within the joint agreed glossary will be dealt with individually.

### C. Anticipation By Prior Art

#### 1. Whether Each Claim At Issue In The '086 Patent Is Anticipated By A Single Prior Art Reference

The first issue that the court must address is whether each claim at issue in the '086 patent is anticipated by a single prior art reference. Defendants included 2 helpful charts in their reply wherein they specify which references of prior art anticipate each claim in both patents. Concerning the '086 patent, Defendants claim that 3 prior art references either expressly or inherently anticipate each claim at issue: (1) Joe W. Clark, *A Gray Non Fungus Seasoning Discoloration of Certain Red Oaks*, 194 SOUTHERN LUMBERMAN (1957) ("Clark"); (2) William T. Simpson, *Steaming Northern Red Oak to Reduce Kiln Drying Time*, 26 FOREST PRODUCTS JOURNAL 35 (1976) ("Simpson 1976 FPJ"); and (3) WILLIAM T. SIMPSON, ACCELERATING THE KILN DRYING OF OAK, RESEARCH PAPER 1 (1980) ("Simpson 1980").[10] As such, the court will analyze each article along with the claims at issue in the '086 patent.

#### a. Clark

■ Clark describes a series of experiments conducted to determine the source of a stain appearing in red oak wood during air drying, and to develop methods to prevent the stain from appearing. However, Clark does not disclose, either expressly or inherently, each and every element of the '086 patent. Claim 1 of the '086 patent specifies "applying the heating fluid at a temperature between about 120° F and 190° F to the wood in the confined zone. . . ." Clark, however, allows for applying heating fluid with a temperature from 120° F to 212° F, the latter of which is substantially higher than 190° F. Thus, Clark does not anticipate claim 1.

Further, claim 4 of the '086 patent prescribes "maintaining the moisture content of the green wood prior to placing the green wood within the confined zone for heating to a moisture loss not greater than 10% of the original moisture content of the wood when felled." Claim 4 is dependent upon claim 1; its requirements further elucidate the general specifications of claim 1. Clark, however, neither states nor intimates that green wood should lose no more than 10% of its original moisture content prior to heating. Defendants argue that 35 U.S.C. § 112 ¶ 4 prohibits the restriction in claim 4 from being used as a requirement for anticipation purposes. The court is not persuaded by this conten-

---

**9.** In the joint glossary, the parties agreed that the preambles of independent claim 1 of the '086 patent, and claims 1 and 7 of the '819 patent do not constitute additional claim limitations. Thus, the preambles will not be considered by the court as claim limitations in ruling on this motion. Joint Agreed Glossary of Claim Terms and Elements at 1 n. 1.

**10.** Defendants also attach the "Declaration Of Dr. Eugene M. Wengert" as Exhibit 3 of their reply. In his declaration, Dr. Wengert states that "one or more of the cited prior art references individually describes, to a person of ordinary skill in the art, each step and each limitation of the . . . claims of the patents in suit." Defs.' Reply Ex. 3 at ¶ 3. The court gives his declaration some weight in deciding the motion, however, Dr. Wengert does not elaborate his findings in sufficient detail for the court to find that all of the claims at issue in the '086 and '819 patents are anticipated solely on the basis of his declaration.

tion. 35 U.S.C. § 112 ¶ 4 states that "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." Since claim 4 is dependant on claim 1, it must be construed to incorporate any limitations present in claim 1. Claim 1, however, is worded more broadly than claim 4 and, in fact, claim 4 puts limitations on claim 1. Thus, there are no limitations in claim 1 which restrict claim 4 from being read as consistent with it.

Finally, claim 5 requires "applying ambient air to said green wood in an environment outside said confined zone." The Clark article is silent as to where the wood is dried and Defendants supply no extrinsic information supporting their position. Accordingly, Clark does not anticipate, either expressly or inherently, claims 1, 4, and 5 of the '086 patent.

### b. *Simpson 1976 FPJ*

█ Defendants ardently argue that Simpson 1976 FPJ anticipates each of the asserted claims of the '086 patent. Simpson 1976 FPJ describes a laboratory study wherein northern red oak lumber was presteamed at 185° F for 4 hours before drying in order to decrease drying time.

Plaintiffs first contend that Defendants failed to prove that the heating fluid employed in Simpson 1976 FPJ had a predetermined moisture content sufficient to maintain the moisture content of green wood. Defendants, however, assert that "little drying took place during the steaming period" in Simpson 1976 FPJ because the dry-bulb was turned off during steaming, the wet-bulb depression did not exceed 2° F to 3° F, and the steam spray was

left on continuously. Simpson 1976 FPJ does state that the kiln temperature rose to 185° F and the wet-bulb depression did not exceed 2° F to 3° F during steaming. Defendants argue that these numbers inherently show that the humidity within the kiln was around 93 96% relative humidity. Defs.' Reply at 12 n. 7. Simpson 1976 FPJ, however, nowhere states what the moisture content of the heating fluid was or that the moisture content of the green wood was sufficiently maintained during heating. Further, Defendants fail to submit any concrete extrinsic evidence which elucidates the relationship between the relative humidity of an enclosed heating environment and its effect on the moisture content of wood. Thus, Simpson 1976 FPJ does not fully anticipate claim 1 of patent '086.

Claim 4 requires that the green wood lose no more than 10% of its original moisture content during heating. Defendants argue that Simpson 1976 FPJ anticipates claim 4. In support, Defendants maintain that the green wood used in Simpson 1976 FPJ had a moisture content "very close" [11] to the moisture content of the wood when the tree was felled because the northern red oak wood used in the experiment had an initial moisture content of approximately 88% prior to drying, and a living red oak sapwood typically has a moisture content of 80%. Plaintiffs, however, dispute these figures. Regarding the 88% figure, Plaintiffs argue it is inexact because it is an average, which ignores many potential variations in the amount of water contained in different pieces of green wood. They further assert that the 80% figure is not instructive because the number, as set forth in a chart cited by Defendants,[12]

---

**11.** The language "very close" employed by Defendants quotes language in the definition of green wood in the joint glossary. *See* Joint Agreed Glossary Of Claim Terms And Elements at 2.

**12.** EDMUND F. RASMUSSEN, DRY KILN OPERATOR'S MANUAL 1, 9 (1981).

refers to the normal moisture content of northern red oak heartwood, but red oak sapwood typically has a moisture content of 69%. *See* Defs.' Reply Ex. 4 at 2. Simpson 1976 FPJ does not mention which type of wood was used for the experiments explained therein. Moreover, Plaintiffs offer convincing evidence which states that the amount of water in green wood can vary greatly within the same species and even within the same tree. *See* Pls.' Supp. Resp. Ex. 13 at 4. Such evidence makes clear the fact that Simpson 1976 FPJ does not adequately verify that the moisture content of the green wood was sufficiently maintained prior to heating.

Claim 5 is not anticipated by the process explained in Simpson 1976 FPJ. Claim 5 requires removing the heated wood from the kiln and exposing it to ambient air either in another chamber or an outdoor environment. *See* Joint Agreed Glossary of Claim Terms And Elements at 5. In Simpson 1976 FPJ, however, the wood was cooled by opening the vents of the kiln in which the wood was originally heated. There is no evidence that the wood was moved during cooling. Accordingly, Simpson 1976 FPJ does not anticipate, either expressly or inherently, claims 1, 4, and 5 of the '086 patent.

### c. *Simpson 1980*

▆ Simpson 1980 does not disclose, either expressly or inherently, each and every element of the '086 patent. Simpson 1980 discusses how presteaming northern red oak and white oak accelerates wood drying time. The paper describes multiple sets of experiments in which lumber is surfaced and then presteamed in a kiln to temperatures of 190° F and 212° F for several hours. The court begins by analyzing Simpson 1980 to see if it anticipates claim 1 of the '086 patent.

Claim 1 requires the heating fluid applied to the green wood to have a predetermined moisture content sufficient to maintain the moisture content of the wood. In support of their motion, Defendants cite Simpson 1980, which refers to another steaming experiment performed by Simpson in 1975. Simpson 1980, however, does not explicitly set forth the moisture content of the heating fluid used in the experiments performed as a basis for *this* paper. Hence, claim 1 is not anticipated.

The following 2 requirements of claim 1 are also troublesome for Defendants. Both require the application of cooling fluid after heating. The preliminary experiments in Simpson 1980 mandate the use of an accelerated drying schedule after presteaming, represented in Tables 2–4. Simpson 1980 at 3, 6. Defendants argue that the beginning temperature and relative humidity of these schedules amounted to the application of a cooling fluid as required in claim 1. However, the court finds that, although the wood is dried through an accelerated process, Simpson 1980 fails to mention the use of a proper cooling fluid after presteaming. In the joint glossary, the term cooling fluid is defined as "[a]mbient air or artificially treated air." Simpson 1980 may have employed a proper cooling fluid as defined by the parties, but that possibility is not sufficient to support a finding of anticipation under an inherency theory. For similar reasons, the limitations incorporated by claims 2 and 5 are not anticipated by Simpson 1980.

Claim 4 adds a limitation on claim 1 by requiring the step of maintaining the moisture content of green wood to a moisture loss not greater than 10% prior to putting it within the confined zone for heating. Defendants offer no evidence concerning this element, and Simpson 1980 is silent as well. Therefore, Simpson 1980 does not anticipate, either expressly or inherently, claims 1, 2, 4, and 5 of the '086 patent.

As evidenced by the above analysis, the court finds that Defendants have not met their burden of demonstrating that each claim at issue in the '086 patent is anticipated by a single prior art reference.

### 2. Whether Each Claim At Issue In The '819 Patent Is Anticipated By A Single Prior Art Reference

The next issue is whether each claim at issue in the '819 patent is anticipated by a single prior art reference. Defendants assert that the following 6 prior art references expressly or inherently anticipate each claim at issue: . (1) W. KARL LOUGHBOROUGH & ERNEST E. HUBERT, PROBLEMS IN THE SEASONING OF SOUTHERN HARDWOODS 1 (1926) ("Loughborough"); (2) ERNEST E. HUBERT, SAP STAINS OF WOOD AND THEIR PREVENTION 1 (1929) ("Hubert"); (3) ROLF THELEN, KILN DRYING HANDBOOK 1 (1930) ("Thelen"); (4) Eric L. Ellwood & Robert W. Erickson, *Effect of Presteaming on Seasoning Stain and Drying Rate of Redwood*, FOREST PRODUCTS JOURNAL 328 (1962) ("Ellwood"); (5) Simpson 1976 FPJ; and (6) Simpson 1980. The court will now analyze each prior art reference to see whether any single reference anticipates every claim at issue in the '819 patent.

#### a. *Loughborough*

■ Loughborough describes steaming green wood in a "steam box" prior to air drying as a way to minimize staining. However, Loughborough does not disclose, either expressly or inherently, each and every element of the '819 patent.

Claim 1 of the '819 patent requires applying a cooling fluid having a temperature substantially less than the temperature of the heated green wood. Claims 2, 3, and 6 are further limitations on this portion of claim 1. Defendants contend that claim 1 is anticipated because Loughborough states that "the best results were obtained by opening both doors at the conclusion of the steam treatment," and "it is necessary to pull the stock out of the steaming chamber hot . . . ." Loughborough at 14–15, 17. But, Loughborough contains no reference regarding the temperature or relative humidity of the cooling fluid to which the heated wood was exposed. It is possible, even probable, that the cooling fluid had a temperature 30° F less than the heated wood and a relative humidity 10% less than the relative humidity of the confined zone, but such probabilities are not sufficient for the court to find anticipation. Therefore, Loughborough does not anticipate claims 1, 2, 3, and 6 of the '819 patent.

Claim 7 is similar to claim 1, but also specifies that the green wood must be stickered, or arranged in bundles of lumber with boards spaced from each other during heating and cooling. Defendants assert that Loughborough anticipates claim 7 in a number of places, most notably when discussing air drying oak and plain red gum, and the necessity of stickering sap gum after steaming. Loughborough at 8–9, 14–15. Although stickering may be beneficial for air drying lumber and necessary after steaming lumber, claim 7 requires wood to be stickered before heating and air drying. *See* Joint Agreed Glossary Of Claim Terms And Elements at 2. Consequently, Loughborough does not anticipate, either expressly or inherently, any of the claims of the '819 patent.

#### b. *Hubert*

■ Hubert is a lengthy article which repeats many of the findings promulgated in Loughborough, but also details the causes and types of stains in various species of lumber and the methods used for prevention of such stains. The article describes that blue stain can be prevented by heating green wood to 140° F for 3 hours

within a saturated atmosphere.[13] Further, Hubert mentions a process whereby sap gum wood is steamed in a cylinder at 212° F for 50 minutes. After steaming, the wood is removed from the cylinder. Hubert, however, does not disclose, either expressly or inherently, each and every element of the '819 patent.

Claim 1 requires application of a cooling fluid having a temperature substantially less than the temperature of the heated wood, claims 2, 3, and 6 are further limitations of claim 1, and claim 7 contains similar limitations. Much like Loughborough, Hubert does not anticipate these claims because it contains no reference regarding the temperature or relative humidity of the cooling fluid to which the heated wood was exposed. As such, Hubert does not anticipate, either expressly or inherently, any of the claims of the '819 patent.

#### c. *Thelen*

■ Thelen notes that steaming sap gum prior to drying kills fungus spores and promotes rapid surface drying of wood. It describes the use of patent steaming cylinders wherein wood is steamed for a set period of time at 180° F to 212° F. After steaming, Thelen recommends the doors of the cylinder should be opened and the wood should be taken out as soon as it can be handled. Nonetheless, Thelen does not disclose, either expressly or inherently, each and every element of the '819 patent.

Claim 1 requires that the moisture content of the green wood be maintained during heating. Thelen, however, says nothing of the moisture content of the green wood prior to or during heating. The use of the word "steam" and listing pressure levels within the cylinder is not adequate to demonstrate anticipation of this claim.

For this reason, Defendants fail to prove that Thelen anticipates claim 7.

Thelen also fails to anticipate claim 6 because it neglects to mention the relative humidity present in the patent steaming cylinder and that of the cooling fluid to which the heated wood was exposed. For these reasons, Thelen does not anticipate, either expressly or inherently, claims 1, 6, and 7 of the '819 patent.

#### d. *Ellwood*

■ Ellwood describes a series of tests conducted on green redwood to determine the effect of presteaming on reducing wood stains. The presteaming treatments were done in an insulated chamber for times ranging from 20 minutes to 16 hours at 212° F, and the relative humidity was held at saturation to prevent drying as much as possible. The wood was then air dried at a "low temperature" before kiln drying. Ellwood, however, does not disclose, either expressly or inherently, each and every element of the '819 patent.

Claim 1 of the '819 patent requires substantially maintaining the moisture content of the green wood during heating. Defendants claim that Ellwood anticipates this portion of claim 1 because it states that "[d]uring steaming at 212° F the relative humidity was held at saturation to prevent drying . . . as much as was possible." Nevertheless, Ellwood also expresses that "[s]teaming of green wood caused immediate loss of moisture by vaporization during the heating up period" and refers to Figure 1, which shows a significant moisture loss from green redwood during the steaming period. Ellwood at 329–30. Thus, it is not entirely clear whether the moisture content of the green wood was substantially maintained during heating.

---

**13.** On page 40, Hubert defines "saturated atmosphere" as having a relative humidity of 100%. The court will apply this definition to its analysis of the Hubert article.

Claim 1 also requires the application of a cooling fluid having a temperature substantially less than the temperature of the heated wood. Ellwood does point out that the wood was allowed to cool at the conclusion of steam drying, and concludes that stain is best controlled by presteaming followed by low-temperature drying. Regardless, Ellwood omits whether or not the wood was allowed to cool by applying a proper cooling fluid, and does not define what is considered a "low-temperature." Defendants also do not provide the court with any extrinsic evidence on this point. Thus, claim 1 is not anticipated by Ellwood. Likewise, claims 2, 3, and 7 are not anticipated because of similar claim requirements.

Finally, claim 6 is not anticipated because it does not mention the relative humidity of the cooling fluid used in relation to the humidity of the insulated chamber for steaming. Therefore, Ellwood does not anticipate, either expressly or inherently, any of the claims of the '819 patent.

e. *Simpson 1976 FPJ & Simpson 1980*

■ As discussed above, neither Simpson 1976 FPJ nor Simpson 1980 disclose, either expressly or inherently, each and every element of the '086 patent. Now, the court must decide whether either reference anticipates each element of the '819 patent.

Claim 1 of the '819 patent requires that the moisture content of the green wood be substantially maintained during heating. Both Simpson 1976 FPJ and Simpson 1980, however, fail to state that the moisture content of the green wood was sufficiently maintained during heating, and Defendants submit little extrinsic evidence on their behalf. Thus, neither Simpson 1976 FPJ nor Simpson 1980 anticipates claim 1 of patent '819.

Furthermore, neither Simpson 1976 FPJ nor Simpson 1980 anticipates claim 7.

Claim 7 requires the positioning of bundles of green wood within a heating enclosure for heating. Such positioning is accomplished through the use of stickers. Neither Simpson 1976 FPJ nor Simpson 1980 discusses the use of stickers when referring to placing wood inside the kiln for heating, however, Defendants claim that the use of stickers is inherent to a person of ordinary skill in the art. This may be true, however, Defendants fail to meet their burden with this unsupported assertion. Defendants must offer evidence to make clear that the asserted inherent characteristic is necessarily present in the process described in the reference. *Continental Can*, 948 F.2d at 1268–69. Here, they have not done so. Accordingly, neither Simpson 1976 FPJ nor Simpson 1980 anticipates, either expressly or inherently, claims 1 and 7 of the '819 patent.

For all of the above reasons, the court finds that Defendants have not met their burden of demonstrating that each claim at issue in the '819 patent is anticipated by a single prior art reference.

## V. CONCLUSION

After reviewing the record, the court concludes that, when viewed in the light most favorable to Plaintiffs, the summary judgment evidence supports the finding that there are numerous disputed issues of material fact regarding whether the '086 and '819 patents are anticipated by a single prior art reference. Therefore, Defendants' motion for summary judgment is hereby DENIED. It is so ORDERED.