**IMX, INC., Plaintiff,**

v.

**LENDINGTREE, LLC, Defendant.**

**No. CIV. 03–1067–SLR.**

United States District Court,
D. Delaware.

Dec. 16, 2005.

---

Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of Potter Anderson & Corroon LLP, Wilmington, DE, for Plaintiff. Of Counsel: John Allcock, Esquire, M. Elizabeth Day, Esquire, William G. Goldman, Esquire, and Christine K. Corbett, Esquire, of DLA Piper Rudnick Gray Cary U.S. LLP, East Palo Alto, CA.

Jack B. Blumenfeld, Esquire, and Julia Heaney, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendant. Of Counsel: Holmes J. Hawkins, Esquire, A. Shane Nichols, Esquire, and James J. Mayberry, Esquire, of King & Spalding, Atlanta, GA.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

On November 24, 2003, plaintiff IMX, Inc. ("IMX") filed this action against defendant LendingTree, LLC ("LendingTree"), alleging infringement of U.S. Patent No. 5,995,947 ("the '947 patent").

Currently before the court are the parties' motions for summary judgment with regard to infringement and invalidity. (D.I. 155, 163, 166) On September 8, 2005, the court heard oral arguments on these motions. The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1338.

## II. BACKGROUND

The '947 patent generally relates to "a method and system for trading loans in real-time by making loan applications, such as home mortgage loan applications, and placing them up for bid by a plurality of potential lenders." '947 patent, abstract. The '947 patent was originally filed as Application 08/928,559 on September 12, 1997 and was granted on November 30, 1999.

Claims 2–18 of the '947 patent depend from claim 1,[1] while claims 20–38 of the '947 patent depend from claim 19.[2] In an order which has issued concurrently with this memorandum opinion, the court has construed the disputed terms "loan application" and "bid" as used in the limitations of several of these claims.

The accused system, the LendingTree Exchange, is an online system designed to connect borrowers to lenders for the purpose of exchanging loan products.[3]

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d

1. Claim 1 of the '947 patent states, "A method for processing loan applications, said method including steps of maintaining a database of pending loan applications and their statuses at a database server, wherein each party to a loan can search and modify that database consistent with their role in the transaction by requests to said server from a client device identified with their role." '947 patent, col. 14, l. 66—col. 15, l. 5.

2. Claim 19 of the '947 patent states, "A system for processing loan applications, said system including a database of pending loan applications, said database including status information regarding said pending loan applications; a transaction server, said transaction server being responsive in real time to requests from parties to said pending loan applications, said requests including requests for searching and requests for modifying said database consistent with roles for said parties." '947 patent, col. 15, l. 59—col. 16, l. 2.

3. During a period between 1998 and 2000, LendingTree also provided a technology known as "Lend–X" to several companies under a private-label agreement. With regard to its infringement allegations, IMX asserts that "the functionality of Lend–X is the same as that of the LendingTree Exchange" and argues that the Lend–X product also infringes several claims of the '947 patent. (D.I. 156 at 7) LendingTree agrees that, for purposes of the motions for summary judgment of infringement, there are no material differences between Lend–X and the LendingTree Exchange. (D.I. 186 at 4) Accordingly, the court's analysis of the LendingTree Exchange will also apply to Lend–X when considering the motions for summary judgment of infringement.

Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Infringement

■ A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). A court should employ a two-step analysis in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995). First, the court must construe the asserted claims to ascertain their meaning and scope. *Id.* Construction of the claims is a question of law subject to de novo review. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed.Cir.1998). The trier of fact must then compare the properly construed claims with the accused infringing product. *Markman*, 52 F.3d at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 889 (Fed.Cir.1988) (citations omitted).

■ Literal infringement occurs where each limitation of at least one claim of the patent is found exactly in the alleged infringer's product. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n. 1 (Fed.Cir.1987). An accused product that does not literally infringe a claim may still infringe under the doctrine of equivalents. For there to be infringement under the doctrine of equivalents, the accused product or process must embody every limitation of a claim, either literally or by an equivalent. *See Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826 (Fed.Cir.1999); *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 41, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). An element is equivalent if the differences between the element and the claim limitation are "insubstantial." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed.Cir.1999). One test used to determine "insubstantiality" is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation. *Graver Tank*, 339 U.S. at 608, 70 S.Ct. 854. This test is commonly referred to as the "function-way-result" test. The mere showing that an accused device is equivalent overall to the claimed invention is insufficient to establish infringement under the doctrine of equivalents. *Id.*

### 1. IMX's Motion for Summary Judgment of Infringement

IMX begins its argument for summary judgment of infringement by asserting that the LendingTree Exchange literally infringes the '947 patent. IMX premises this contention primarily upon the alleged infringement by the LendingTree Exchange of independent claims 1 and 19. Pursuant to this argument, IMX contends that the LendingTree Exchange is a system for processing loan applications. The

court has construed the term "loan application" to mean "a request for an extension of credit in a format that contains sufficiently detailed information to enable a lender to grant or deny the request." IMX asserts that the LendingTree Exchange allows borrowers to fill out a form (which LendingTree refers to as a "qualification form") that "collects significant personal information, financial information, and information about the loan and property—everything that is required for a lender … to make a decision on whether to extend an offer (i.e., make a bid) on a loan to a prospective borrower." (D.I. 156 at 11) For ease of reference, the court will refer to the LendingTree Exchange qualification form as the "Qualification Form." LendingTree maintains that the Qualification Form "does not require or permit a prospective borrower to submit enough information to enable a lender to make a decision to extend credit." (D.I. 167 at 12) Thus, the scope of information contained in the Qualification Form is a central issue in the infringement analysis.

The '947 patent details the characteristics of a loan application and notes that a "loan profile" is included in each loan application. ('947 patent, col. 3, ll. 46–52) The '947 patent describes the minimum amount of information to be included in a loan profile in the preferred embodiment. ('947 patent, col. 3, ll. 53–67) This information includes: (1) information about the loan including loan category, amount, type, and duration; (2) information about the property including type, location, address, asking price, and appraised value; and (3) information about the borrower including income, assets, credit history, and other negative financial information. (*Id.*) While this description is not conclusive evidence as to the precise scope of the limitations of the claims, it provides the court with some guidance on this issue. Based on the evidence presented by the parties, the Quali-

fication Form does not require the borrower to enter a property address, and only basic financial information need be entered by the borrower. (D.I. 167, ex. G) This suggests that the Qualification Form would not contain sufficient information to even be classified as a loan profile under the '947 patent and, therefore, does not constitute a loan application.

LendingTree has offered the testimony of its expert, Mr. Scott M. Cooley, who has stated that the Qualification Form is not a loan application because, among other reasons, it does not include the minimum amount of information needed for a lender to make any commitment to a loan applicant. (D.I. 167, ex. I at 7–10) As stated by Ms. Alexandra Shin, the vice president of one of the lenders who utilizes the LendingTree Exchange, Qualification Forms "do not contain enough information to allow [it] to decide whether to extend credit to that particular consumer" because the forms do not include information such as a credit report, credit score, property appraisal, income documentation, or other forms of information verification. (D.I. 186 at ex. D) IMX refutes this evidence. According to the testimony of IMX's expert, Dr. Martin Kaliski, the Qualification Form contains a sufficient amount of information to enable a lender to decide whether to grant a loan to a specific borrower. (D.I. 158 at ¶ 15; ex. E) Based on this testimony, there remain genuine issues of material fact regarding whether the Qualification Form is a loan application.

Aside from the testimonial evidence offered as to whether the Qualification Form contains sufficient information for a lender to make a credit decision, several objective statements contained in the interface text of the LendingTree Exchange reveal that the use of the Qualification Form is not intended to be sufficient to enable a lender to make such a decision. A Prequalifica-

tion Letter, which may be directed to a prospective borrower as a result of the borrower's submission of the Qualification Form, notes that "LendingTree is not a lending institution" and that the Prequalification Letter is "not a pre-approval." (D.I. 167, ex. N) In addition, although the LendingTree Exchange itself refers to the contents of a certain communication from a lender to a prospective borrower as "Offer Details," the text of the communication states that it "does not constitute an actual commitment to lend or an offer to extend credit." (D.I. 167, ex. O) Thus, based on the language it conveys to customers, the LendingTree Exchange does not deal with loan applications.

Similarly, the evidence offered suggests that information provided to consumers by a lender in response to the submission of the Qualification Form is not regarded by the lender as a binding offer or a commitment to extend credit. (D.I. 167, ex. E) Instead of intending such information as an offer in response to a loan application, a lender would be providing the information to a qualified consumer through the LendingTree Exchange with the purpose of allowing the consumer to collect quotes and compare loan products at a prequalification stage. (Id.)

In continuing its assertion of literal infringement, IMX contends that the LendingTree Exchange stores pending loan applications and their status in a database connected to a transaction server. IMX completes its literal infringement analysis by alleging that the LendingTree Exchange allows lenders and borrowers to search the database consistent with their roles in the transaction. In making these arguments, IMX is alleging infringement of dependent claims 2–8, 12, 18, 20–27, 30, 31 and 38. Summary judgment of infringement with respect to these dependent claims cannot be granted since IMX

has failed to sufficiently demonstrate infringement of the independent claims 1 and 19, on which the dependent asserted claims rely.

■ Viewing the evidence in a light most favorable to LendingTree, IMX has failed to sufficiently show that the Qualification Form filled in by a borrower using the LendingTree Exchange would include information in sufficient detail to allow a lender to grant or deny a request for an extension of credit. Based on the evidence adduced by the parties, a question remains as to whether the LendingTree Exchange is a system for processing loan applications. Consequently, a genuine issue of material fact exists with respect to whether the LendingTree Exchange literally infringes each of the asserted claims. IMX's motion for summary judgment of infringement shall be denied as to literal infringement.

IMX continues its infringement argument by alleging that, even under LendingTree's preferred construction of the disputed claims, the LendingTree Exchange infringes the '947 patent under the doctrine of equivalents. As noted above, the LendingTree Exchange would infringe the asserted claims of the '947 patent if it performs substantially the same function, in substantially the same way, and gives substantially the same result as the invention claimed in the '947 patent. Even under this standard, however, IMX has failed to prove infringement under the doctrine of equivalents.

First, the evidence suggests that the Qualification Form utilized in the LendingTree Exchange does not function like that of a loan application under the '947 patent. As explained under the court's analysis of literal infringement, submission of a Qualification Form does not appear to serve as a request for an extension of credit, nor is sufficient information contained in the

Qualification Form for a lender to make a credit decision. Second, the Qualification Form works in a different way than a loan application, since less data is included in a Qualification Form such that information verification and borrower approval are not possible as with a loan application. Finally, the Qualification Form causes a different result than a loan application. Instead of allowing a consumer to be granted or denied a request for credit, the LendingTree Exchange enables a consumer to collect quotes and compare loan products at a prequalification stage.

Viewing the evidence in a light most favorable to LendingTree, genuine issues of material fact exist on the question of whether there are insubstantial differences between the LendingTree Exchange and the claimed invention of the '947 patent. As a result, a genuine issue of material fact remains with respect to whether the LendingTree Exchange infringes the asserted claims of the '947 patent under the doctrine of equivalents. IMX's motion for summary judgment of infringement shall be denied in this regard.

### 2. LendingTree's Motion for Summary Judgment of Noninfringement

As noted above, a genuine issue of material fact exists as to whether the LendingTree Exchange is a system for processing loan applications such that it would infringe claim 1 of the '947 patent. In particular, IMX has raised several issues with respect to the precise nature of the Qualification Form. For example, IMX notes that in the glossary of the LendingTree website, the "qualification form" or "Q-form" is defined as a "series of questions that you complete in order to request a loan." (D.I. 188, ex. S) In addition, the same glossary defines an "application" as "[a] written statement of personal and financial infor-

mation that is required to approve a loan." (*Id.*) As argued by IMX, these terms as defined by LendingTree would bring its Qualification Form within the scope of a "loan application." (D.I. 158, ex. E) While, in light of the full scope of evidence offered by the parties, these definitions do not provide irrefutable proof that the LendingTree Exchange has infringed the claims of the '947 patent, they do suggest that the question of whether the Qualification Form is a loan application remains as a genuine issue of material fact.

In addition, a question remains as to whether the Qualification Form contains sufficient information to allow a lender to make a decision whether to grant or deny a request for credit. For example, LendingTree cites to the deposition of Alexandra Shin to suggest that the Qualification Form does not contain such information as a credit report or credit score, which Ms. Shin claimed are necessary to enable a lender to make a credit decision. (D.I. 186 at ex. D) However, the LendingTree website and its own witnesses suggest that LendingTree "pulls [a consumer's] credit report when [the consumer] complete[s] a loan request." (D.I. 188, ex. I at 6; ex. H at 55–56; ex. N at 20–21) This is another example of a genuine issue of material fact which remains unresolved in light of the evidence offered by the parties.

Viewing the evidence in a light most favorable to IMX, a genuine issue of material fact exists as to whether the LendingTree Exchange is a system for processing loan applications. Consequently, a genuine issue of material fact exists with respect to whether the LendingTree Exchange literally infringes each of the asserted claims. LendingTree's motion for summary judgment of noninfringement shall be denied.

## B. Invalidity

LendingTree argues that claims 1–8, 11, 12, 18–27, 30, 31, and 38 of the '947 patent ("the asserted claims"), which IMX contends are infringed by the LendingTree Exchange, are invalid under 35 U.S.C. § 102 as anticipated by the public use and/or publication of numerous prior art references. .(D.I. 168) As an alternative argument, LendingTree contends that any differences between those prior art references and the asserted claims of the '947 patent are obvious in light of the prior art, such that the asserted claims are invalid for obviousness under 35 U.S.C. § 103. (*Id.*)

■■■ A patent is presumed valid and the burden of proving invalidity, whether under § 112 or otherwise, rests with the challenger. *See* 35 U.S.C. § 282. In order to overcome this presumption, the party challenging validity bears the burden of proving by clear and convincing evidence that the invention fails to meet the requirements of patentability. *See Hewlett–Packard Co. v. Bausch & Lomb,* 909 F.2d 1464, 1467 (Fed.Cir.1990). Clear and convincing evidence is evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984).

■■ Corroboration of a witness' oral testimony is required to invalidate a patent under 35 U.S.C. § 102. *See Finnigan Corp. v. International Trade Comm'n,* 180 F.3d 1354, 1367 (Fed.Cir.1999). This requirement exists regardless of whether the witness is an interested party or an unin-

terested party. *See id.* at 1367–68. Corroboration has been required by the courts "because of doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidentiary standard to invalidate a patent." *Id.* at 1368.

### 1. Anticipation

■■■ Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States."[4] A claim is anticipated only if each and every limitation as set forth in the claim is found, either expressly or inherently described, in a single prior art reference. *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 631 (Fed.Cir. 1987); *Scripps,* 927 F.2d at 1576 ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention.").

■■■ In determining whether a patented invention is explicitly anticipated, the claims are read in the context of the patent specification in which they arise and in which the invention is described. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed. Cir.1995). The prosecution history and the prior art may be consulted if needed to impart clarity or to avoid ambiguity in ascertaining whether the invention is novel or was previously known in the art. *Id.* The prior art need not be *ipsissimis verbis*

---

4. Anticipation is also recognized under 35 U.S.C. § 102(e). As that subsection states, [a] person shall be entitled to a patent unless an application for patent, published under section 122(b), by another filed in the United States before the invention by the

applicant for patent ... or a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent.
35 U.S.C. § 102(e).

(i.e., use identical words as those recited in the claims) to be anticipating. *Structural Rubber Prods., Co. v. Park Rubber Co.,* 749 F.2d 707, 716 (Fed.Cir.1984).

 A single prior art reference also may anticipate a claim where one of ordinary skill in the art would have understood each and every claim limitation to have been disclosed inherently in the reference. *Continental Can Co. USA Inc. v. Monsanto Co.,* 948 F.2d 1264, 1268 (Fed. Cir.1991). The Federal Circuit has explained that an inherent limitation is one that is necessarily present and not one that may be established by probabilities or possibilities. *Id.* That is, "the mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id.* The Federal Circuit also has observed that "inherency operates to anticipate entire inventions as well as single limitations within an invention." *Schering Corp. v. Geneva Pharms. Inc.,* 339 F.3d 1373, 1380 (Fed.Cir.2003). Moreover, recognition of an inherent limitation by a person of ordinary skill in the art before the critical date is not required to establish inherent anticipation. *Id.* at 1377.

 "The statutory phrase 'printed publication' has been interpreted to mean that, before the critical date, the reference must have been sufficiently accessible to the public interested in the art; dissemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published.' "[5] *In re Cronyn,* 890 F.2d 1158, 1160 (Fed.Cir.1989). Whether something is a "printed publication" is determined on a case by case basis, requiring inquiry into the facts and circumstances of the reference's disclosure to

the public. *In re Klopfenstein,* 380 F.3d 1345, 1350 (Fed.Cir.2004).

A court should also consider whether or not the "printed publication" was the subject of confidentiality agreements or whether the disclosing party had "a reasonable expectation that the information [would] not be copied." *In re Klopfenstein,* 380 F.3d at 1351. "Professional and behavioral norms [that] entitle a party to a reasonable expectation that the information displayed will not be copied" can also be evidence that something is not a "printed publication." *Id.* On the other hand, "evidence of business practice that was sufficient to prove [a document] was widely available and accessible to the interested public" can be sufficient to prove that the document was publicly accessible. *Constant v. Advanced Micro–Devices, Inc.,* 848 F.2d 1560, 1569 (Fed.Cir.1988).

 An anticipation inquiry involves two steps. First, the court must construe the claims of the patent in suit as a matter of law. *Key Pharms. v. Hercon Laboratories Corp.,* 161 F.3d 709, 714 (Fed.Cir.1998). Second, the finder of fact must compare the construed claims against the prior art. *Id.* A finding of anticipation will invalidate the patent. *Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 147 F.3d 1374, 1378 (Fed.Cir.1998).

### a. Mortgage Analysis Reporting System

LendingTree argues that the asserted claims of the '947 patent are anticipated under 35 U.S.C. § 102(b) due to the prior public use and sale of the Mortgage Analysis Reporting System ("MARS") more than a year before the filing of the '947 patent. LendingTree contends that sever-

---

**5.** The relevant "public" consists of those individuals who would be interested in the invention, or the relevant art. *Cooper Cameron*

*Corp. v. Kvaerner Oilfield Products, Inc.,* 291 F.3d 1317, 1324 (Fed.Cir.2002).

al prior art publications describing MARS corroborate the evidence of prior public use and also independently anticipate the asserted claims.

The first argument by LendingTree for anticipation of the '947 patent by the MARS prior art is based on the alleged public use and sale of MARS. As noted above, a prior art reference must contain each and every limitation of a claim (either expressly or inherently described) in order to anticipate the claim; similarly, there must be no difference between the claimed invention and the referenced prior art for the claimed invention to be anticipated.

■ LendingTree identifies five items of evidence to demonstrate that MARS contains each and every limitation of the asserted claims of the '947 patent: 1) Deposition testimony of Allan Redstone; 2) Expert report of Mr. Scott M. Cooley; 3) MARS Point of Sale Reference Manual; 4) "Marketing Mortgages on MARS"; and 5) "GHR Services, Inc., *MARS System Administration* (1993–94)".[6] Having reviewed all of this evidence to determine whether MARS is anticipatory, the court concludes that genuine issues of material fact exist as to whether the public use and sale of MARS anticipates the asserted claims. For example, "Marketing Mortgages on MARS" was published in Mortgage Banking Magazine in November of 1992. LendingTree contends that the article, by describing the components of the MARS system and detailing the distribution of information in that system, anticipates the claims of the '947 patent. (D.I.

168 at 16) LendingTree premises its argument primarily on the expert report of Mr. Cooley. (D.I. 168, ex. C) IMX counters LendingTree by citing the declaration of Dr. Martin Kaliski. (D.I. 190, ex. 2) The contentions of Cooley and Kaliski greatly differ in the analyses of the article's language. For example, there are disagreements as to whether the article discloses: (1) a database of pending loan applications and their statuses; (2) each party to a loan being able to search and modify the database in accordance with their role; and (3) a real-time system. As a result of these largely uncorroborated contentions, there remains a genuine issue of material fact as to whether the MARS prior art discloses several required limitations of the asserted claims and anticipates those claims under § 102(b).

### b. Contour Mortgage Software Products

LendingTree next asserts that the public use and sale of a suite of Contour mortgage software products ("Contour Products") anticipate the asserted claims of the '947 patent under 35 U.S.C. § 102(b). LendingTree argues that the Contour Products include The Loan Handler, The Loan Tracker, and The Loan Finder. (D.I. 168 at 21) LendingTree identifies six sources of evidence to support its argument that the Contour Products include each and every limitation of the asserted claims of the '947 patent: 1) the testimony of Mr. Cooley; 2) The Loan Handler Manual; 3) The Loan Tracker

**6.** To the extent that LendingTree asserts that any of these items of evidence themselves are anticipatory prior art, the court finds that 4 of 5 are not, as a matter of law. In the first instance, the uncorroborated testimony of Mr. Redstone cannot be anticipatory; likewise, anticipation by a **single** prior art reference cannot be met by Mr. Redstone's testimony if corroborated by **additional** evidence. Neither can the expert testimony of Mr. Cooley be anticipatory prior art. With respect to the MARS Point of Sale Reference Manual and the "GHR Services, Inc., *MARS System Administration* (1993–94)" reference, the record does not demonstrate that either of these references were printed publications. (D.I. 168 at 2, 14; ex. B at 71–72, 166–168, 177; ex. E at 1)

Manual; 4) The Loan Finder brochure; 5) the testimony of Mr. Michael Beck; and 6) the testimony of Mr. Mark Adams. In addition, LendingTree contends that the prior publication of the LendingTree Manual is itself an anticipatory reference.[7] (D.I. 168 at 27) After reviewing the evidence to assess whether the Contour Products are anticipatory, the court concludes that genuine issues of material fact exist as to whether the public use and sale of the Contour Products anticipate the asserted claims. For example, the evidentiary sources cited by LendingTree to suggest that each party to a loan who uses the Contour Products is able to search and modify stored information regarding the loan are directly refuted by the evidence contained in the declaration of Dr. Kaliski. (D.I. 190, ex. 2 at ¶¶ 70–106) Moreover, through their deposition testimony, Mr. Beck and Mr. Adams each independently admit that the Contour Products were designed to be used by a single company and would not allow anyone outside the company to access or modify any information created by the Contour Products, such as loan applications. (D.I. 168, ex. L at 72–85, 90–95; ex. M at 92–94) This testimony suggests that the Contour Products' restrictions on access to stored information regarding the loan would prevent each party to the loan from conducting activities which are required limitations of the asserted claims of the '947 patent.

### c. Mortrade User's Manual

█ LendingTree · asserts that the Mortrade User's Manual, which was released in December 1990 and "discloses a software program and computer system that allows mortgages to be brought [sic] and sold over a network", anticipates claims 1–8, 11–12, 19–27 and 30 of the '947 patent. (D.I.· 168 at 29) However, the evidence suggests that the Mortrade system does not use a transaction server which is responsive in real-time, as required under the limitations of claim 19 of the '947 patent. LendingTree's expert notes that the Mortrade system facilitates a real-time response only by accessing a local copy of database information which is apart from the transaction server. (D.I. 168, ex. C at ¶ 249) In addition, LendingTree only offers evidence to show that the Mortrade User's Manual was released in 1990; there is no proof of record that it was sufficiently accessible to the public to be a printed publication. In fact, as IMX points out, the Mortrade User's Manual was designated "Highly Confidential—Attorneys Eyes Only" under the protective order of this case, suggesting that it is a confidential document that was not and is not publicly accessible. (D.I. 190 at 22) Based on the evidence adduced by the parties with respect to the content and publication of the Mortrade User's Manual, the court denies LendingTree's motion for summary judgment of invalidity and finds that the Mortrade User's Manual was not a printed publication for purposes of invalidating the claimed invention.

### d. "Canada's Electronic Mortgage Market"

LendingTree next asserts that the prior publication of the article "Canada's Electronic Mortgage Market" is an anticipatory reference for the asserted claims of the '947 patent under § 102(b). (D.I. 168 at 32–33) That article was published in Mortgage Originator in July of 1996 and

---

**7.** With respect to The Loan Handler Manual, the record does not demonstrate that this reference was a printed publication. LendingTree offers no evidence to show that sufficient dissemination of and public accessibility to this had ever taken place for it to constitute a printed publication.

describes a software package known as the Mortgage Market. (*Id.*)

Insufficient evidence has been offered by LendingTree to prove that the asserted claims are anticipated by this article. The article fails to disclose that, when using the Mortgage Market, each party to a loan can search and modify the database consistent with their role as required under the asserted claims. For instance, the article notes that lenders download information from a central location to their local machines, but no mention is made of whether the lenders can search and modify this information. (D.I. 168, ex. C at tab 6) In addition, the article does not demonstrate or claim that the Mortgage Market is a real-time system, as required under the limitations of the asserted claims. In fact, the method of data transfer specified in the article is that of batch uploads and batch downloads of information, which even LendingTree's expert admits is not a real-time process. (*Id.* at 16–17; D.I. 168, ex. C at ¶ 47) In evaluating this evidence, the court denies LendingTree's motion for summary judgment as it relates to the "Canada's Electronic Mortgage Market" reference.

### e. "Hang On For A Wild Ride"

LendingTree argues that the article "Hang On For A Wild Ride", published in Mortgage Broker Magazine in February of 1995, is a § 102(b) prior art reference which anticipates the '947 patent due to its publication before the patent's priority date. However, LendingTree has failed to show by clear and convincing evidence that the article discloses several limitations of the asserted claims. For instance, the article does not disclose that each party to a loan can search and modify a database of pending loan applications in accordance with their role, which is a required element of every asserted claim. (D.I. 168, ex. C,

tab 7) Based on the evidence offered, the article does not disclose a database capable of accepting query information, instead describing a posting of loan packages to an electronic bulletin board. (*Id.*) In the system described by the article, information about loans would be posted to a file on an electronic bulletin board, and the parties to the loan would communicate directly with one another such that no searching or modification of a database by each of the parties would take place. (*Id.*) The court denies LendingTree's motion for summary judgment as it relates to the "Hang On For A Wild Ride" article.

### f. "Sizing Up the New Networks"

Similar to its contention regarding "Hang On For A Wild Ride," LendingTree offers an argument for anticipation with reference to the article "Sizing Up the New Networks", published in Mortgage Banking Magazine in December of 1994. LendingTree has failed to show that "Sizing Up the New Networks" anticipates the asserted claims under § 102(b). One of the limitations of the asserted claims which the article fails to disclose is "a database of pending loan applications and their statuses", which is a required element of every asserted claim. The article discloses value-added networks and notes the potential of e-mail communications to be used with such networks, but the use of a database of pending loan applications is not specifically suggested. (D.I. 168, ex. C, tab 5) The article also does not specify whether the value-added networks it describes would be "responsive in real time to requests from parties" for searching and modifying stored information, which is another required limitation to the asserted claims of the '947 patent. The court denies LendingTree's motion for summary judgment as it relates to the "Sizing Up the New Networks" reference.

### g. U.S. Patent No. 5,966,699

In addition to its anticipation arguments under 35 U.S.C. § 102(b), LendingTree claims that there are prior art references which anticipate the asserted claims of the '947 patent under 35 U.S.C. § 102(e). LendingTree asserts that U.S. Patent No. 5,966,699 ("the '699 patent"), issued on October 12, 1999 and based on an application filed on October 11, 1996, is an example of § 102(e) prior art. (D.I. 168 at 33-37) Pursuant to this argument, LendingTree contends that the asserted claims of the '947 patent are anticipated by the '699 patent if IMX fails to show that the '947 patent had an actual invention date that predates the filing of the '699 patent. (*Id.*) IMX offers evidence that two of the three inventors of the '947 testified under oath that the invention which is the subject of the '947 patent was conceived no later than July 15, 1995 and reduced to practice in November 1995. This unrefuted testimonial evidence, for which IMX offers documentary corroboration, suggests that the priority date of the '947 patent for purposes of § 102(e) is July 15, 1995. (D.I. 190 at 6) While LendingTree contends that this evidence "does not show early conception or reduction to practice for a number of claim elements," no evidence is offered on this point. (D.I. 204 at 20) Thus, the court finds that the '699 reference is not a valid prior art reference and LendingTree shall be precluded from asserting that the '699 patent is prior art for purposes of anticipation and obviousness.

### 2. Obviousness

■ To establish that a patent claim is obvious, clear and convincing evidence must exist to show that "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103 (2003). The question of obviousness, therefore, turns on four factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed.Cir.1996). The existence of each limitation of a claim in the prior art does not, by itself, demonstrate obviousness. Instead, there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed.Cir.1999). "Such a suggestion or motivation may come from the references themselves, from knowledge by those skilled in the art that certain references are of special interest in a field, or even from the nature of the problem to be solved." *Id.* at 1356.

■ To rebut a prima facie case of obviousness based on prior art, objective evidence of nonobviousness may be used. *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1360 (Fed.Cir.1999). This objective evidence includes: (1) a long-felt and unmet need in the art for the invention; (2) failure of others to achieve the results of the invention; (3) commercial success of the invention; (4) copying of the invention by others in the field; (5) whether the invention was contrary to accepted wisdom of the prior art; (6) expression of disbelief or skepticism by those skilled in the art upon learning of the invention; (7) unexpected results; (8) praise for the invention by those in the field; and (9) independent invention by others. *See Gra-*

*ham,* 383 U.S. at 17–19, 86 S.Ct. 684. "The objective evidence of nonobviousness ... should when present always be considered as an integral part of the analysis." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,* 851 F.2d 1387, 1393 (Fed.Cir. 1988) (quoting *W.L. Gore & Assocs. Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555 (Fed. Cir.1983), cert. denied, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984)).

 LendingTree, as an alternative argument to each of its anticipation contentions, maintains that each of the prior art references render obvious the asserted claims of the '947 patent. (D.I. 204 at 10) In advancing this argument, LendingTree asserts that the prior art references, when considered individually or in combination with one another, make the '947 patent obvious to one of ordinary skill in the art. (*Id.*)

As its first contention regarding obviousness, LendingTree argues that the asserted claims of the '947 patent are invalid as obvious in light of the prior public use of the MARS system and the publications regarding MARS. With respect to a compelling reason, suggestion, or motivation that would lead one of ordinary skill in the art to combine the references, LendingTree asserts that "all of the cited prior art are directly related to a common and very specific field ... and one of ordinary skill in the art would recognize that implicit in each reference is a suggestion to combine it with another reference to arrive at the invention of the '947 patent." (D.I. 204 at 11) However, LendingTree identifies no evidence that would suggest a reasonable likelihood of success based on the combination of these prior art references.

With respect to the secondary considerations which the court considers in its obviousness analysis, LendingTree relies on the expert report of Mr. Cooley to suggest the absence of the following criteria: (1) a long-felt and unmet need in the art for the claimed invention; (2) commercial success of the claimed invention; (3) copying of the invention by others in the field; and (4) unexpected results. (D.I. 168 at 20) IMX argues that there was a long-felt need for the claimed invention and argues that both parties have enjoyed commercial success due to the '947 patent. (D.I. 190 at 14) IMX additionally cites several sources to assert the presence of the following criteria: (1) the failure of others to achieve the results of the claimed invention; and (2) praise for the claimed invention by those in the field. (*Id.*) Ultimately, each party accentuates different secondary considerations for the evaluation of the court, but neither party provides a reason why the evaluation of a particular consideration should carry weight in the court's decision on the issue of obviousness. There are genuine issues of material fact in this regard.

LendingTree next contends that the prior public use and sale of the Contour Products and Contour manuals render the asserted claims obvious. In this way, LendingTree advances a similar argument to the one that it offered for the MARS prior art references. The specific motivation to combine the Contour prior art references with one another or with other references is not substantiated, and the court is presented with no evidence to suggest that the combination of any references would possess a reasonable likelihood of success.

LendingTree contends that the prior publication of the articles "Canada's Electronic Mortgage Market", "Sizing Up the New Network", and "Hang On for a Wild Ride" render the asserted claims of the '947 patent obvious under § 103. While these prior art references provide relevant information regarding the scope and content of the prior art at several points in time, no clear evidence is cited to

either suggest a motivation to combine these references or qualify whether any combination would make obvious the invention detailed in the '947 patent.

The court concludes that there are genuine issues of material fact as to whether the prior art references cited by LendingTree make obvious the asserted claims of the '947 patent.

Due to the genuine issues of material fact which remain with respect to whether each of the asserted claims of the '947 patent are anticipated or rendered obvious by the cited prior art references, IMX's cross motion for summary judgment of validity shall be denied in part.

## V. CONCLUSION

For the reasons stated, IMX's motion for summary judgment of infringement is denied, LendingTree's motion for summary judgment of noninfringement is denied, IMX's cross motion for summary judgment of patent validity is denied and LendingTree's motion for summary judgment of patent invalidity is denied. An order consistent with this memorandum opinion shall issue.

## ORDER

At Wilmington this 16th day of December, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. IMX's motion for summary judgment of infringement (D.I. 155) is denied.

2. LendingTree's motion for summary judgment of noninfringement of U.S. Patent No. 5,995,947 (D.I. 163) is denied.

3. LendingTree's motion for summary judgment of patent invalidity (D.I. 166) is denied.

4. IMX's cross motion for summary judgment of patent validity (D.I. 190) is granted in part and denied in part.